**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| DEREK LOGUE, | Case No. 1:13-cv-348 |
| Plaintiff, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| U.S. MARSHALS, et al., | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

Pursuant to local practice, this case has been referred to the undersigned magistrate judge for a Report and Recommendation on any dispositive motions, and for issuance of appropriate Orders on non-dispositive motions and pretrial matters. *See generally* 28 U.S.C. §636(b).

**I. Background**

The record reflects that Plaintiff was identified as a sexual predator following a 2001 conviction in Alabama. At some point in time, he relocated to the City of Cincinnati in Hamilton County, Ohio, and was classified as a "sexual predator" under the Ohio classification system then in effect. The undersigned takes judicial notice of the fact that Plaintiff has extensively litigated his classification in the state courts of Ohio, albeit with little success. *See generally Logue v. State of Ohio,* Hamilton County Court of Common Pleas Case No. SP00800172 and Court of Appeals Case No. C0800585; *Logue v. Leis*, Hamilton County Court of Common Pleas Case No. A050593 and Court of Appeals Case No. C0500894; *McNeil v. Logue*, Hamilton County Court of Common Please Case No. A507486 and Court of Appeals Case No. C0600943; (*see also* Doc.

41 at 10 "I have devoted the last decade of my life to activism against the sex offender registry, residency restriction laws, and other laws that the courts do not have the guts to admit are unconstitutional.").

Plaintiff filed this lawsuit on May 22, 2013, one day after the United States Marshal Service and the Hamilton County Sheriff's Office allegedly conducted a joint sex offender "compliance check."  On June 10, 2013, the undersigned filed a Report and Recommendation ("R&R") that concluded that the Plaintiff's complaint should be dismissed in its entirety, with prejudice, for failure to state a claim, pursuant to 28 U.S.C. §1915(e)(2)(B). (Doc. 4).  Thereafter, however, Plaintiff filed an Amended Complaint and the undersigned vacated the original R&R.

In a second Report and Recommendation filed on August 1, 2013, the undersigned determined that two distinct claims against four separate Defendants should, "without the benefit of briefing by the parties…and out of an abundance of caution," survive the relatively low bar of initial screening, because they were not so deficient as to merit immediate dismissal for failure to state a claim.  In contrast to those two non-frivolous claims, the August 1, 2013 R&R recommended the immediate dismissal of multiple additional claims, including: the dismissal of the United States Department of Justice as a defendant; the dismissal of all "class action" style claims on behalf of others "similarly situated"; the dismissal of Plaintiff's claim for relief under 42 U.S.C. §14141; the dismissal of Plaintiff's *Bivens* and/or claim under 42 U.S.C. §1983 based upon allegations that the compliance check was conducted in a "militaristic" and "very threatening, aggressive and frightening manner"; and last, dismissal of a claim challenging the constitutionality of the registration and notification provisions contained

2

in the Adam Walsh Act, as codified in Ohio. The August 1, 2013 R&R was adopted as the opinion of the Court on September 23, 2013. (Doc. 17).

The four Defendants who remain include the United States Marshal Service and an individual U.S. Marshal identified only as "John Doe" (hereinafter "the Federal Defendants"), as well as the Hamilton County Sheriff's Office and an individual from that office identified as "Deputy with Badge #153" ("the County Defendants"). Both sets of Defendants filed Answers to the Amended Complaint in November 2013. (*See* Docs. 24, 25). In a Rule 26(f) report filed on December 23, 2013, Plaintiff and all Defendants jointly agreed that they would postpone discovery pending disposition of preliminary dispositive motions. (Doc. 29). On April 3, 2014, the undersigned filed a Memorandum Order that, in part, clarified and reiterated the narrow scope of Plaintiff's two non-frivolous claims, and directed Defendants to promptly "file any motions to dismiss or other preliminary dispositive motions concerning the two surviving claims in Plaintiff's Amended Complaint." (Doc. 33).

Thereafter, the County and Federal Defendants filed separate motions to dismiss all claims, to which Plaintiff initially filed no response. In response to a "show cause" order directing Plaintiff to show cause "why the Defendants' motions (Docs. 36, 38) should not be construed as unopposed and granted for the reasons stated," Plaintiff filed a document that herein has been construed as a response in opposition to Defendants' motions, (see Doc. 41), to which the County Defendants filed a reply.[1]

---

[1] In their reply, the County Defendants urge this Court to ignore Plaintiff's response, in part because Plaintiff provides no reasons for his failure to earlier respond to the motions to dismiss. While the undersigned declines to ignore the construed response based upon the procedural objection, the undersigned agrees with Defendants' alternate argument that the response provides no basis on the merits to deny the pending motions to dismiss.

3

(Doc. 42). For the reasons that follow, I now recommend that both motions to dismiss be granted.

## II. Analysis

### A. Plaintiff's Two Narrow Non-Frivolous Claims

In reviewing the extensive allegations and claims in Plaintiff's Amended Complaint, the undersigned concluded in the August 1, 2013 R&R that Plaintiff

> should be allowed to proceed …to the extent that he seeks to bring claims for declaratory and injunctive relief against the federal defendants under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and the state defendants under 42 U.S.C. §1983, challenging the application of the sex offender 'compliance check' provisions of the AWA [Adam Walsh Act] to him on Fourth and Fourteenth Amendment grounds. *Cf. Doe v. LaDue*, 514 F. Supp.2d 1131 (D. Minn. 2007)(granting preliminary injunction where the plaintiff challenged a city police department's "proactive compliance or verification approach in monitoring registered sex offenders" on the ground that the policy extended beyond [that] authorized by state statute and violated the plaintiff's Fourth Amendment right…and his Fourteenth Amendment right).

(Doc. 8 at 4). Additionally, the Court adopted the recommendation that Plaintiff be permitted to proceed "on his claims for declaratory and injunctive relief to the extent that he challenges the USMS's authority under the AWA, as codified and applied in Ohio, to participate in the compliance checks of plaintiff." (*Id.,* adopted in Doc. 17).

In making the recommendation that these two very narrow claims be permitted to proceed against both agency Defendants and the two individual Defendants, the undersigned acknowledged that Plaintiff's claims could be dismissed in the future on grounds that neither of the two agencies "is an entity capable of being sued." (*Id.*). However, the claims against the entities were not subject to *immediate* dismissal because "it is unclear *at this juncture* whether the amended complaint may be construed as a complaint against the federal government and Hamilton County stemming from an

4

unconstitutional policy or practice that is being enforced by the USMS and HCSO. Therefore, at least at this early state of the proceedings, the USMS and HCSO shall remain as named defendants." *Id.* at n. 1 (emphasis added).

All other claims in Plaintiff's Amended Complaint were dismissed. The remainder of the August 1, 2013 R&R emphasized the narrowness of the non-frivolous claims, and that the two claims could not be summarily dismissed as frivolous only due to the Court's "inability to determine *at the screening level* (without briefing) whether the referenced allegations fail to state a claim." (*See* Doc. 33 at 6, n.1, emphasis added). Both the County and Federal Defendants, through their respective motions to dismiss, have now clearly demonstrated that Plaintiff's allegations fail to state any cognizable claim.

**B. Motions to Dismiss**

**1. Dismissal on Motion After Screening**

In a portion of Plaintiff's construed response to Defendants' pending motions, Plaintiff appears to argue that this Court should not grant the motions to dismiss because it previously "determined that…the two main issues were sufficient to continue" his case. (Doc. 41 at 1). However, as the above history reflects, the only determination that the Court made was that the two claims could not be summarily dismissed as "frivolous" absent briefing by the parties. The Court made abundantly clear, as did the parties themselves by agreeing to forego stay discovery in their Rule 26(f) report, that the Court would re-evaluate the validity of the two very narrowly defined claims following the filing of Defendants' anticipated motions to dismiss. No conflict is created by the dismissal of a complaint for failure to state a claim on motion, after full briefing by the

5

parties, even if the Court previously was reluctant to dismiss the same complaint *sua sponte* before the defendant(s) were even served, based upon the limited review conducted under the very low threshold bar of 28 U.S.C. §1915.

### 2. Fourth Amendment Claim Not Cognizable

In their motion, the County Defendants persuasively argue that the Plaintiff's description of the May 21, 2013 compliance check does not rise to the level of a Fourth Amendment violation, because Plaintiff alleges only that the Deputy with Badge #153 knocked on his door to inquire about a registered sexual predator. "When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do." *Kentucky v. King*, 131 S. Ct. 1849, 1862 (2011). The undersigned initially declined to dismiss Plaintiff's claim against the County defendants based on the *potential* applicability of *Doe v. LaDue*, 514 F. Supp.2d 1131 (D. Minn. 2007), a case in which a plaintiff had alleged that officers had "seized him and entered his house at all hours of the day and night." The undersigned neither considered nor discussed the applicability of *Kentucky v. King* at the screening level.

Defendants appropriately now distinguish *LaDue* on grounds that in that case, the Minnesota district court expressly noted that it was "undisputed that [local police] officers have subjected Doe to searches and seizures of his person and that they did so without probable cause or reasonable suspicion of wrongdoing." (Doc. 36 at 6, citing *LaDue*, 514 F. Supp.2d at 1137). By contrast, in this case Plaintiff does not allege facts that reflect anything more than the type of activity that has been clearly held by the Supreme Court not to violate the Fourth Amendment. In fact, in response to the County Defendants' motion, Plaintiff argues that the Defendants "violated my 4th Amendment

6

rights by their mere presence," (Doc. 41 at 9), and that "even the act of coming to my door constituted a search." (*Id.* at 10). Both the County and the Federal Defendants are entitled to dismissal because Plaintiff cannot overcome the Supreme Court's contrary pronouncement in *Kentucky v. King*. *See also United States v. Dillard*, 438 F.3d 675 682 (6th Cir. 2006)(no reasonable expectation of privacy in common hallway of apartment building).

Plaintiff goes on to dispute the legitimacy and/or constitutionality of compliance checks in general. However, that argument impermissibly expands the scope of his narrow Fourth Amendment claim to a claim previously dismissed as frivolous on initial screening under §1915(e). As this Court previously stated, "[c]ourts that have addressed such claims have concluded that sex offender registration and notification requirements do not trigger constitutional concerns." (Doc. 8 at 8, citing *Connecticut Dep't of Public Safety v. Doe*, 538 U.S. 1, 7-8 (2003)); *see also Valentine v. Strickland*, No. 5:08-cv-993-JRA, 2009 WL 9052193, at **5-9 (N.D. Ohio Aug. 19, 2009)(rejecting plaintiff's claims that, as codified in Ohio, the AWA's registration and notification requirements violate both due process and equal protection); *Bruggeman v. Taft*, 27 Fed. Appx. 456, 458 (6th Cir. 2001)(affirming *sua sponte* screening dismissal of complaint alleging a violation of the plaintiff's First, Fifth, Ninth and Fourteenth Amendment rights through enforcement of Ohio's sexual predator registration and notification laws); *J.M. v. Henderson*, No. 2:09-cv-855, 2011 WL 4572007, at *5 (S.D. Ohio, Sept. 30, 2011)(Watson, J.)(citing collected cases and rejecting the plaintiff's argument that "invoking community notice of his [juvenile] sex offender status violated his rights under either the Eighth or Fourteenth Amendments to the U.S. Constitution"

because the authority that existed in 2009, when the notices were sent, "indicates that community notice of a sex offender's status is constitutionally permissible.").[2]

In addition to the insurmountable bar presented by *Kentucky v. King*, the Federal Defendants argue that settled case law permits the limited type of "search" that occurred here, to the extent that Plaintiff alleges that merely knocking and asking questions would ever be considered a "search" on the facts presented, under a "reasonableness" standard. *See generally Griffin v. Wisconsin*, 483 U.S. 868, 873-874 (1987); *see also Gunderson v. Hvass*, 339 F.3d 639, 643-44 (8th Cir. 2003). The undersigned finds it unnecessary to reach this issue, because no search or seizure occurred under the settled authority of *Kentucky v. King*.

### 3. Color of State Law Required for §1983 Claim

#### a. Claim Against County Deputy

Plaintiff asserts that in conducting the compliance check, the deputy acted under the Adam Walsh Act. To the extent that Plaintiff alleges that the compliance check was conducted under that federal law, the County Defendants argue that he fails to allege any constitutional violation under "color of state law," as is required to demonstrate a claim under 42 U.S.C. §1983. However, Plaintiff argues that because Ohio adopted the AWA and because the Ohio Supreme Court has ruled that other provisions of the AWA are unconstitutional as applied in Ohio, his allegations are sufficient to at least implicitly invoke state law. Plaintiff also generally cites O.R.C. §2950.

Ohio Revised Code §2950.111(A)(1) states that once a sex offender has

---

[2]*See also generally*, Doc. 8 at 9, n.3, recognizing that several Ohio Supreme Court cases have severed or struck down certain provisions of the AWA as applied in Ohio, but distinguishing Plaintiff's claims in this case as outside the scope of the referenced case law.

8

registered a residence address, that offender is subject to residency compliance checks by a sheriff or his designee who may "request that the person confirm or deny that the offender…currently resides at that address," and who "may attempt to confirm that an offender…currently resides at the address in question…." O.R.C. §2950.111(A)(1) and (C). A deputy "is not limited in the number of requests that may be made under this section regarding any registration…." *Id.* To the extent that Plaintiff relies upon state law, the undersigned finds that his complaint is reasonably construed as alleging that the County Deputy acted under color of state law.

### b. Official Capacity Claim

Plaintiff's complaint is construed as an "official capacity" suit because, despite naming the individual deputy, he contends that the Hamilton County Sheriff's Office "acting under the color of state and federal law, is the agency most directly responsible for" the compliance checks. (Doc. 41 at 12). However, as this Court previously recognized, the Hamilton County Sheriff's Office is not *sui juris* or subject to suit. *See McGuire v. Ameritech Servs., Inc.*, 253 F. Supp.2d 988, 1015 (S.D. Ohio 2003); (Doc. 8 at 4, n. 1). Moreover, a unit of local government cannot be held liable under §1983 under *respondeat superior*. *Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 692 (1978).

While an entity may be held liable when an official policy or custom causes an actor to violate constitutional rights, there must be a direct causal link between the policy or custom and the alleged constitutional violation. *Canton v. Harris*, 489 U.S. 378, 387 (1989). Here, while Plaintiff's amended complaint generally can be viewed as alleging that the "compliance checks" are made pursuant to policy and/or state and

9

federal law, Plaintiff has failed to name any County official or policymaker. Only municipal officers who have final policymaking authority may, by their actions, subject the municipality (or Sheriff's Office) to liability. *St. Louis v. Praprotinik*, 485 U.S. 112, 123 (1988)(citing *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986)). Therefore, Plaintiff's claims against County Deputy with Badge #153, to the extent brought against that deputy in his official capacity, should be dismissed.

### 4. All Four Defendants Are Entitled to Immunity

#### a. Qualified Immunity for Individual Defendants

As stated above, Plaintiff's complaint is reasonably interpreted as alleging a claim against Hamilton County Deputy with Badge #153 in his individual capacity, to the extent that Plaintiff has alleged that he acted in accordance with Ohio law. However, both the County Deputy and U.S. Marshal John Doe (to the extent he is also named in his individual capacity) are clearly entitled to qualified immunity. Plaintiff argues that the two individuals should not be given qualified immunity, because their actions were outside the scope of their employment, and/or in bad faith. However, Plaintiff's complaint is devoid of any factual allegations that would suggest in any way that either the Deputy or Marshal acted on his own, in any manner outside of the scope of his employment or in bad faith, in conducting a routine compliance check by knocking on Plaintiff's door. Because the undersigned can discern no violation of any "clearly established" constitutional right, qualified immunity entitles them to dismissal of all claims brought against them.

Even if a court were to determine that the U.S. Marshal should not have accompanied the Hamilton County Deputy on the compliance check, the absence of

10

any Fourth Amendment violation and the lack of any "clearly established" constitutional right that was violated by merely knocking on the Plaintiff's door warrants the dismissal of any possible claim against U.S. Marshal John Doe.  Neither individual searched Plaintiff's residence or even entered his home.  Plaintiff's broad challenge to the AWA was dismissed on screening.  To the extent that any equal protection claim survived, Plaintiff clearly is not in a suspect class that could support a Fourteenth Amendment claim; therefore, qualified immunity also bars Plaintiff's Fourteenth Amendment claim against the two individual Defendants. *See generally Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled on other grounds by *Pearson v Callahan,* 555 U.S. 223, 236 (2009).

### b.  Immunity for Sheriff's Office and U.S. Marshal Service and/or Official Capacity Claims

Pursuant to O.R.C. §2950.12(A)(1)-(9), the State and Federal Defendants are "immune from liability in a civil suit" for damages "allegedly caused by an act or omission in connection with a power, duty, responsibility, or authorization under" the AWA as codified in Ohio.  The U.S. Marshal John Doe, as well as the agency for whom he works, also are entitled to statutory immunity under federal law.  42 U.S.C. §16929.

Additionally, the Defendants are entitled to sovereign immunity to the extent that Plaintiff's claims are stated either against the individual law enforcement officers in their official capacities, or against the agencies for whom they work.  Like the Hamilton County Sheriff's Office, the U.S. Marshal Service is not capable of being sued on the facts presented in this context.  *See also Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)(holding that Marshal Service is immune from suit as agency of the United States, additional citations omitted); *Mathis v. U.S. Marshal Service,* No. 2:11cv271, 2011 WL 1336575, at *2 (S.D. Ohio Apr. 5, 2011)

11

(Kemp, M.J.) (Report & Recommendation)(dismissing a complaint on initial screening on grounds that "[f]irst and foremost, the United States Marshals Service is not an entity which can be sued").

### 5. No *Bivens* Claim Independently Stated

Although suit can be maintained against an individual federal defendant under some circumstances, assuming waiver of sovereign immunity under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), no *Bivens* claim has been stated here. First, a *Bivens* claim may not be stated against the Marshal Service itself. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994). The Federal Torts Claim Act (FTCA) contains a general waiver of sovereign immunity that permits suit against an agency in some circumstances, but only where the Plaintiff has named the United States as the proper defendant and has exhausted his administrative remedies by filing an administrative claim under the FTCA prior to filing a federal lawsuit. Plaintiff has not done so here, and a failure to do so "results in a fatal lack of jurisdiction." *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990).

### 6. 14th Amendment

Plaintiff argues very broadly that he has stated a claim under the Fourteenth Amendment based upon an alleged violation of his right to "due process" under the Fourteenth Amendment, to the extent that Defendants continue to enforce the AWA through compliance checks at his home and/or place of employment. Plaintiff's amended complaint continues to argue on behalf of all registrants, but the Court previously has rejected Plaintiff's class action allegations. He contends that the failure to conduct an individualized hearing before visiting his home, and the absence of a

procedural mechanism through which he may challenge his status under the program, violate his due process rights. However, these latter claims also were previously rejected on initial screening. In his amended complaint, he attempts to further resurrect his previously dismissed "Equal Protection Clause" claim. (Doc. 7 at 20). Having reviewed Plaintiff's allegations, the undersigned can discern no viable Fourteenth Amendment claim against any of the named Defendants.

### 7. Attempt to Further Amend

In his Response to the Court's Show Cause Order, herein construed as a response to the Defendants' respective motions to dismiss, Plaintiff appears to be attempting to further amend his complaint to include a new claim for monetary damages. (Doc. 41 at 16). Aside from the fact that this attempt to amend his complaint is procedurally improper, any motion to amend filed on this basis would be denied as futile. All Defendants are entitled to Eleventh Amendment immunity from claims for monetary damages. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

### 8. The Alabama Case Settlement

Plaintiff argues that his case is "similar in nature" to a case filed in the Northern District of Alabama, *Doe v. Entrekin*, Case No. 4:13-cv-1701-JHE, in which the parties therein executed a settlement. However, a settlement agreement from another court has no bearing on the pending motions to dismiss in this case.

### 9. Claim for Declaratory and Injunctive Relief

Last but not least, the undersigned recommends dismissal of the second narrowly stated claim that was initially permitted to proceed beyond screening: namely, Plaintiff's claim for declaratory and injunctive relief "to the extent [Plaintiff] challenges

13

the USMS's authority under the AWA, as codified and applied in Ohio, to participate in the compliance checks" involving Plaintiff. (Doc. 8 at 4; Doc. 33 at 5-6). All Defendants are entitled to dismissal of this second claim because there does not appear to be any basis for this Court's jurisdiction in the absence of any related constitutional violation.

The Federal Defendants additionally argue that the United States Marshal Service is permitted to accompany and participate in residency compliance checks under the AWA as codified in Ohio. The AWA explicitly provides that the "Attorney General shall use the resources of Federal law enforcement, including the United States Marshals Service, to assist jurisdictions in locating and apprehending sex offenders who violate sex offender registration requirements." 42 U.S.C. §16941(a). In addition, the USMS generally has been "authorized to investigate such fugitive matters…as directed by the Attorney General," and the AWA provides that any sex offender "who violates a sex offender registration requirement shall be deemed a fugitive." *Id.* Federal courts have generally held that the federal Sex Offender Registration and Notification Act (SORNA) provides an independent registration requirement, which is enforceable by the U.S. Marshal Service. 18 U.S.C. §2250; *see also generally U.S. v. Kebodeaux*, 133 S. Ct. 2496 (2013)(upholding constitutionality of SORNA). Moreover, 42 U.S.C. §16922 states, in part, that in enforcing the requirements of a jurisdiction's registry:

> An appropriate official shall notify the Attorney General and appropriate law enforcement agencies of any failure by a sex offender to comply with the requirements of a registry and revise the jurisdiction's registry to reflect that nature of that failure. The appropriate official, the Attorney General, and each such law enforcement agency shall take appropriate action to ensure compliance.

*Id.*

Plaintiff does not dispute that the USMS may participate in compliance checks

14

under Ohio and federal law to the extent that a sex offender <u>has failed to comply</u> with the requirements of a registry. However, he argues that he had not failed to comply with the registry on May 22, 2013 and therefore was not a "fugitive" that the Marshal Service could investigate. Thus, he asserts that the U.S. Marshal Service was not statutorily authorized by SORNA or Ohio law to accompany the Hamilton County Sheriff's Office deputy when that deputy conducted a residency compliance check at Plaintiff's apartment on May 22, 2013. In Plaintiff's view, the USMS is authorized to investigate and/or accompany local police only if and/or when the local law enforcement agency already has discovered a failure to comply and/or that the registrant has become a fugitive.

By contrast, the Federal Defendants advocate in favor of a type of "pre-emptive" authority, focusing on the second sentence of SORNA, which authorizes the Attorney General to "take appropriate action to ensure compliance." They assert that "USMS assistance in conducting residency 'compliance checks' enables the USMS to immediately apprehend a sex offender once a SORNA violation is discovered, rather than when the sex offender becomes a fugitive and may already be on the run or in hiding." (Doc. 38 at 6). They assert that both federal and County Defendants "have significant discretion to investigate" including in conducting "compliance checks." (Doc. 38 at 13-14. The U.S. Marshal Service bolsters its authority to accompany state authorities by reference to state law, which provides for residency compliance checks by a sheriff or his designee who may "request that the person confirm or deny that the offender…currently resides at that address." O.R.C. §2950.111(A)1).

In the absence of any constitutional violation that would support a §1983 or

15

*Bivens* claim, and because the referenced statutes themselves do not appear to authorize any private right of action, the undersigned finds no grounds to reach the issue of whether the U.S. Marshal Service was statutorily authorized to accompany the Sheriff's deputy during the residency compliance check in question.

### III.  Conclusion and Recommendation

For the reasons discussed above, IT IS RECOMMENDED THAT Defendants' motions to dismiss all claims against them (Docs. 36, 38) be GRANTED, and that this case be closed.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DEREK LOGUE,                                                                            Case No. 1:13-cv-348

           Plaintiff,                                                       Dlott, J.
                                                                                 Bowman, M.J.

     v.

U.S. MARSHALS, et al.,

          Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).